IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAIIAN AIRLINES, INC., | CIV. NO. 15-00369 BMK |
| Plaintiff, | |
| | ORDER GRANTING |
| vs. | DEFENDANT'S MOTION FOR |
| | SUMMARY JUDGMENT AND |
| ASSOCIATION OF FLIGHT | DENYING PLAINTIFF'S MOTION |
| ATTENDANTS-CWA, AFL-CIO, | FOR SUMMARY JUDGMENT |
| Defendant. | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Hawaiian Airlines, Inc. ("Hawaiian") filed this lawsuit to vacate an arbitration award requiring Hawaiian to permit employees under an EEO investigation and their union to review evidence gathered as a part of the investigation.  As explained in detail below, under well-established principles affording this Court an "extremely limited role in reviewing arbitration awards,"[1] the Court concludes that Hawaiian has not established an explicit, well-defined, and dominant public policy that specifically militates against the arbitration award.

---

[1] S. Cal. Gas Co. v. Util. Workers, Local 132, AFL-CIO, 265 F.3d 787, 789 (9th Cir. 2001).

BACKGROUND

The facts of this case as determined by the System Board of Adjustment ("Board") are binding on this Court. See Horizon Air Indus., Inc. v. Airline Professionals Assoc., Civ. No. 1:13-681 RSM, 2014 WL 2896001, at *1 (W.D. Wash. 2014). The background information below is taken primarily from the Board's Award.

    I.    Collective Bargaining Agreement

Hawaiian is a commercial airline that has a Collective Bargaining Agreement ("CBA") with Defendant Association of Flight Attendants-CWA, AFL-CIO ("the Union"), which is a labor union that represents Hawaiian flight attendants. (Robin Kobayashi Decl'n ¶ 3; Plaintiff Ex. 1.) Section 23(E) of the CBA, which is entitled "Grievance Procedure - General," provides:

> a. When a Flight Attendant is called into a supervisor's office for a discussion relating to her/his job performance, she/he shall be advised of the nature of the meeting and of her/his right to have another Association member of her/his choice present as a witness.
> b. If a Flight Attendant chooses to have an Association member present, the meeting will not be held until the member is available to accompany the Flight Attendant. The Flight Attendant(s) will be allowed no more than twenty-four (24) hours to obtain such witness unless other time limits are arranged by mutual agreement. It is agreed that these meetings will be held as expeditiously as possible.

> c. <u>When a Flight Attendant attends a meeting that may result in disciplinary action, the Flight Attendant and Association member will be allowed adequate time during the meeting to privately review all documents or reports relating to such action.</u>

(Plaintiff Ex. 1, CBA Section 23(E)(10)(a-c) (emphasis added).)  At issue in this case is the underscored language in 23(E)(10)(c), which has been in effect since 1977.  (Award at 2; Plaintiff MSJ at 5; Defendant MSJ at 4.)

   II. Investigation of Hawaiian Flight Attendants

In March 2013, Hawaiian received complaints of sexual harassment against two flight attendants, Doe I and Doe II.  (Award at 3.)  Hawaiian's designated Human Resource factfinder, Gail Kim-Moe, investigated the complaints.  (<u>Id</u>.)  On March 8, 2013, Kim-Moe interviewed Doe I and Doe II separately.  (<u>Id.</u> at 4.)  During the interviews, each Doe was represented by Union representatives, Scott Henton and Scott Akau.  (<u>Id.</u>)  At each interview, the Union representatives asked Kim-Moe to produce documents regarding the complaints, pursuant to CBA Section 23(E)(10)(c).  (<u>Id.</u>)  Kim-Moe refused to produce the documents, causing the Union representatives to stop the interviews.  (<u>Id.</u>)

On March 29, 2013, Hawaiian notified Doe I and Doe II via letter that a second interview would be held on April 4, 2013.  (<u>Id.</u>)  The letters stated that Kim-Moe would provide Doe I and Doe II with "enough information about the

allegations made against you so that you may meaningfully respond to each allegation. However, we will not provide all the documents relating to . . . this investigation." (Id.)

At the April 4, 2013 interviews, Kim-Moe again refused to produce all documents relating to the complaints. (Id. at 5.) According to the Union representatives, they could not investigate the allegations nor could they provide the best representation for Doe I and Doe II without reviewing all of the pertinent documents. (Id.) Ultimately, Doe I retired after receiving a charge letter, and Doe II was informed that the claims of harassment were not substantiated. (Id.; Kobayashi Decl'n ¶ 6.)

      III.    The Union's Grievance to the System Board of Adjustment

On April 12, 2013, the Union initiated a grievance under the CBA, asserting that Hawaiian violated Section 23(E)(10)(c) when it refused the Union's requests to produce documents. (Arb. Award at 1.) The parties stipulated that the grievance was properly before the System Board of Adjustment ("Board") for a decision on the merits (id.), and also stipulated to the following issues to be decided by the Board:

> Does the Company violate Section 23.E.10.c of the collective bargaining agreement by refusing to disclose and to permit the private review of documents to the Union in a meeting related to an EEO investigation that

>may lead to disciplinary action?  If so, should the Board issue a cease and desist order?

(Id.)

The Board issued its Award on July 24, 2014.  (Id.)  After parsing the language of Section 23(E)(10)(c), a majority of the Board concluded that "the Company had an obligation to allow the accused flight attendants (Doe I and Doe II) and the employees' representatives adequate time during the meeting to privately review 'all documents or reports' relating to the complaint."  (Id. at 16-18.)  The Board explained that "all documents or reports" did not include the proprietary notes of the factfinder, the factfinder's work product, or any communication between the factfinder and an attorney.  (Id. at 18.)  Further, the Board concluded that, although the flight attendants and Union representatives may review the documents privately, they may not "take possession of" or "copy or photograph" the documents.  (Id. at 18-19.)  The Board also ordered Hawaiian to cease and desist from violating Section 23(E)(10)(c) in the future.  (Id. at 21.)

The Board also concluded that its holding "does not conflict with public policy."  (Id. at 19.)  It noted that any chilling effect due to document disclosure is "outweighed by the due process components of Section 23.E.10.c."  (Id. at 20.)  The Board also stated that "it is fairer to be more transparent with the accused employee than less transparent because mistakes are more likely to occur in

the latter situation" and that "producing all documents and reports will guarantee that the answers to the factfinder's queries will be substantive and meaningful." (Id. at 19.)   Ultimately, the Board concluded that Hawaiian did "not point[] to any authority that expressly bars [it] from producing documents as mandated by Section 23.E.10.c."  (Id.)

        IV.    The Present Lawsuit

On September 18, 2015, Hawaiian initiated this lawsuit, petitioning the Court to vacate the Board's Award as contrary to public policy.[2]  (Doc. 1 at 8.)  In response, the Union filed a counterclaim, asking the Court to confirm and enforce the Award.  (Doc. 11 at 7-14.)  On April 29, 2016, the parties filed Cross Motions for Summary Judgment, seeking a determination of whether CBA Section 23(E)(10)(c) violates public policy.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must

---

[2] Hawaiian's Petition is authorized under section 153 of the Railway Labor Act.  45 U.S.C. § 153(q) ("If any employee or group of employees, or any carrier, . . . is aggrieved by any of the terms of an award . . . , then such employee or group of employees or carrier may file in any United States district . . . , a petition for review of the division's order.").

resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

## DISCUSSION

It is well-settled that federal labor policy favors the resolution of disputes through arbitration; thus, the Ninth Circuit has held that "judicial scrutiny of an arbitrator's decision is extremely limited."  S. Cal. Gas Co. v. Utility Workers Union of America, Local 132, AFL-CIO, 265 F.3d 787, 792 (9th Cir. 2001) (emphasis in original).  "In reviewing an arbitral award, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  Id. (quotation marks and ellipses omitted). "If an 'arbitrator is even arguably construing or applying the contract and acting

within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'"  Id.  "Only where the arbitrator ignores the contract's plain language, choosing instead to dispense his own brand of industrial justice, may we question his judgment."  Id.

The Ninth Circuit has recognized "three <u>narrow</u> exceptions" to the general rule of deferring to an arbitration award.  <u>United Food & Commercial Workers Int'l Union Local 588 v. Foster Poultry Farms</u>, 74 F.3d 169, 173 (9th Cir. 1995) (emphasis in original).  The three exceptions are:

> (1) when the arbitrator's award does not "draw its essence from the collective bargaining agreement" and the arbitrator is dispensing "his own brand of industrial justice"; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) <u>when the award is contrary to public policy</u>.

Id. (emphasis added).  The public policy exception is at issue in this case.

I.   The Public Policy Exception

"The question of public policy is ultimately one for resolution by the courts."  Id. at 174.  However, "[c]ourts should be reluctant to vacate arbitration awards on public policy grounds."  Id.  As the Ninth Circuit explained:

> The parties to a collective bargaining agreement did not bargain for a court's judgment.  They bargained for an arbitrator to tell them what was "just cause" for discharge and what was not.  In so doing, they chose a method of resolving their differences and definitively interpreting

>their bargain. Each side obtained certain advantages from the arrangement. Neither had the right to believe that it could refuse to honor an arbitrator's award simply because it was disappointed by or disagreed with the result in a particular case.

Id. (brackets omitted).

To vacate an arbitration award on public policy grounds, this Court "must (1) find that 'an explicit, well defined and dominant public policy' exists here and (2) that 'the policy is one that specifically militates against the relief ordered by the arbitrator.'" Id. The requisite public policy must be "demonstrated only 'by reference to the laws and legal precedents' and . . . not [by] the product of the parties' or the courts' 'general considerations of supposed public interests.'" Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, 886 F.2d 1200, 1210 (9th Cir. 1989) (en banc). "The party seeking to vacate the arbitration award bears the burden of showing that the arbitration award violates an 'explicit, dominant and well-defined' public policy." Foster Poultry Farms, 74 F.3d at 174.

With respect to determining whether the policy "specifically militates against the relief ordered by the arbitrator," the "court must focus on the award itself, not the behavior or conduct of the party in question." S. Cal. Gas. Co., 265 F.3d at 795 ("In this case, for example, the court's inquiry is not whether drug use in a safety-sensitive position violates some public policy, but rather whether Daniel's

and Wilson's reinstatement pursuant to the arbitration award contravenes some explicit, well-defined, and dominant public policy."); Stead Motors, 886 F.2d at 1215 ("As we have explained, the critical inquiry is not whether the underlying act for which the employee was disciplined violates public policy, but whether there is a public policy barring reinstatement of an individual who has committed a wrongful act.").

As applied to this case, Hawaiian argues there is an explicit, well-defined, and dominant public policy against sexual harassment in the workplace that favors employer prevention and the application of sanctions. (Plaintiff MSJ at 13-14.)   The Court agrees.   See Stroehmann Bakeries Inc. v. Local 776, Int'l Brotherhood of Teamsters, 969 F.2d 1436, 1442 (3rd Cir. 1992) ("there is a well-defined, dominant public policy against sexual harassment in the workplace" and "a well-defined, dominant public policy favoring voluntary employer prevention and application of sanctions against sexual harassment in the workplace exists").   However, this public policy does not "specifically militate[] against the relief ordered by" the Board.   Foster Poultry Farms, 74 F.3d at 174.

In an effort to tailor the well-defined public policy against sexual harassment so that it militates against the Board's ruling, Hawaiian argues that the policy against sexual harassment in the workplace includes the requirement that

employers keep their investigations confidential.  (Plaintiff MSJ at 14.)  Hawaiian cites to two EEOC Enforcement Guidelines[3] interpreting Title VII, arguing that they establish a policy that confidentiality is required during workplace investigations of sexual harassment.  (Plaintiff MSJ at 15-16.)

   EEOC Guideline 002 states that an employer's anti-harassment policy should include assurances that "the employer will protect the confidentiality of harassment complaints to the extent possible."  (Plaintiff Appendix 1, EEOC Guideline 002 at 7.)  EEOC Guideline 050 similarly provides that employers "should ensure confidentiality as much as possible."  (Plaintiff Appendix 2, EEOC Guideline 050 at 9.)  The EEOC Guidelines recognize, however, that an "employer cannot guarantee complete confidentiality, since it cannot conduct an effective investigation without revealing certain information to the alleged harasser and potential witnesses."  (Plaintiff Appendix 1, EEOC Guideline 002 at 8.)

   At most, the EEOC Guidelines require that an employer's sexual harassment procedures ensure "confidentiality to the extent possible," not "complete confidentiality."  (Plaintiff Appendix 1, EEOC Guideline 002 at 7-8; Plaintiff

---

[3] Specifically, Plaintiff cites to the following documents, which are attached as Appendices to Plaintiff's MSJ:  EEOC Enforcement Guidance on Vicarious Liability for Unlawful Harassment by Supervisors, No. 915.002 (June 18, 1999) ("EEOC Guideline 002") and EEOC Enforcement Guidance on Current Issues in Sexual Harassment, No. 915.050 (March 19, 1990) ("EEOC Guideline 050").

Appendix 2, EEOC Guideline 050 at 9.)  Importantly, the requirements of Section 23(E)(10)(c) and the Board's ruling are entirely consistent with ensuring confidentiality "to the extent possible."  They prohibit disclosure to anyone other than the flight attendant and Union representatives, limit the documents that may be reviewed, and prohibit the taking or copying of records.  (Arb. Award 18-20; Plaintiff Ex. 1, CBA Section 23(E)(10)(c).)  These reasonable limitations ensure confidentiality to the extent possible while providing the accused with information to "guarantee that the answers to the factfinder's queries will be substantive and meaningful."  (Arb. Award at 19.)

In addition to citing EEOC Guidelines, Hawaiian points to policy reasons for maintaining confidentiality.  (Plaintiff MSJ at 16-17.)  Hawaiian asserts that withholding information from the accused "enables the EEO investigators to make necessary credibility assessments by testing assertions by the accused against the evidence collected."  (Id. at 17.)  Hawaiian also claims that, if confidentiality is not maintained, the "accused may script his or her answers based on the information that the Company is compelled to provide."  (Id.)  Additionally, Hawaiian contends that confidentiality "guards against workplace retaliation" and "facilitates fact-finding and the elimination of harassment in the workplace." (Plaintiff Opp. at 15-16.)  However, these reasons are "general considerations of

12

supposed public interests" that are inadequate to establish an explicit, well-defined, and dominant public policy.  Stead Motors, 886 F.2d at 1210.

In sum, the Court concludes that the explicit, well-defined, and dominant public policy against sexual harassment in the workplace does not specifically militate against the Board's Award.  Additionally, the CBA and the Board's ruling are consistent with the EEOC Guidelines' requirement that confidentiality be maintained "to the extent possible."  Accordingly, the Court concludes that the narrow public policy exception to the Court's limited review of labor arbitration awards does not apply in this case.

II.     Whether the Board Went Beyond the Plain Language of the CBA

Alternatively, Hawaiian argues that this Court should vacate the Board's Award because the Board "went beyond the plain language [of the] CBA and relied on its own notions of equity and fairness in issuing its ruling."  (Plaintiff Reply at 9; see also Plaintiff Opp. at 20-22.)

In the Ninth Circuit, "where the arbitrator ignores the contract's plain language, choosing instead to dispense his own brand of industrial justice, [courts] may question his judgment."  S. Cal. Gas Co., 265 F.3d at 792.  Here, in its Award, the Board parsed the language of Section 23(E)(10)(c) in detail for several pages before concluding that Hawaiian violated the "straightforward contract provision

13

consisting of a single sentence." (Arb. Award at 16-21.) The Board confined its analysis to the terms of Section 23(E)(10)(c) and did not go "beyond the plain language of the CBA." (Plaintiff Reply at 9.)

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Union's Motion for Summary Judgment (Doc. 26), DENIES Hawaiian's Motion for Summary Judgment (Doc. 28), and CONFIRMS the Board's Award. The Clerk of Court is directed to enter judgment in favor of the Union and against Hawaiian.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 31, 2016.

/s/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Hawaiian Airlines, Inc. v. Association of Flight Attendants-CWA, AFL-CIO, CIV. NO. 15-00369 BMK, ORDER GRANTING DEFENDANT'S MEMORIAL FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.